IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CALLEN BERAN, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. H-10-0185 |
| | § |
| WORLD TELEMETRY, INC., *et al.*, | § |
| | § |
| Defendants. | § |

**MEMORANDUM AND ORDER**

Callen Beran sued his former employer, World Telemetry, Inc.; its president, Casey Zandbergen; its former chief executive officer, John Lee; and its former chief financial officer, Oscar Rodriguez, asserting Texas state-law claims for breach of contract, conversion, fraudulent inducement, fraud, quantum meruit, promissory estoppel, assumpsit, and negligent misrepresentation. The suit, initially filed in state court and removed, arises out of an alleged breach of a 2007 employment and commission agreement between Beran and World Telemetry. (Docket Entry No. 1, Appx. A, Ex. 3, Original Petition).

World Telemetry is a Delaware corporation with its principal place of business in Tulsa, Oklahoma; Zandbergen is a citizen of Oklahoma; and Beran, Lee, and Rodriguez are all Texas citizens. (*Id.* at ¶¶ 2–2.5). The defendants removed under diversity jurisdiction, 28 U.S.C. § 1332(a)(1), on the basis that the nondiverse defendants—Lee and Rodriguez—were fraudulently joined. (Docket Entry No. 1). Beran timely moved to remand, (Docket Entry No. 5); the defendants responded, (Docket Entry No. 7); and Beran replied, (Docket Entry No. 10). In his reply, Beran also

moved to strike portions of the defendants' response, (*id.*), and the defendants responded, (Docket Entry No. 12).

In June 2010, World Telemetry filed a suggestion of bankruptcy. (Docket Entry No. 17). The suggestion of bankruptcy states that the bankruptcy stay should extend to the individual defendants because the claims against them were "wholly derivative" of the claims against World Telemetry. (*Id.*). This court stayed the litigation as to World Telemetry and ordered the individual defendants to show cause why the stay should extend to the claims against them. (Docket Entry No. 18). The individual defendants responded, (Docket Entry No. 20), and Beran replied, (Docket Entry No. 21).

Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court denies the motion to stay and grants the motion to remand. The claims against the individual defendants are remanded to the 125th Judicial District of Harris County, Texas. The reasons are set forth in detail below.

**I.     Background**

World Telemetry, a provider of software, electronic hardware, and consulting services, hired Beran in May 2007 to work as a sales associate. (*Id.* at ¶¶ 4.1–4.2). Beran alleges that his employment and commission agreement entitled him to $60,000.00 in annual salary, 10% commission from all software sales he made, 7% commission from all hardware sales he made, and the option to purchase World Telemetry stock. (*Id.* at ¶ 4.2). Beran also alleges that before entering into the employment agreement, the individual defendants promised him that he would be paid under the employment and commission agreement to induce him to work for World Telemetry. (*Id.* at ¶ 4.10).

In April 2008, Beran alleges that he sold a trial version of World Telemetry software and related hardware to Nalco Company, a water treatment and process improvement company. On completing the sale, Beran alleges that he began negotiating a "corporate-level sale of both [World Telemetry] hardware and software" that would be "the biggest hardware, software and consulting services sale in World Telemetry's history." (*Id.* at ¶ 4.3). Beran alleges that World Telemetry's officers assured him that he would receive the commission under the employment agreement. (*Id.* at ¶¶ 4.4, 7.1, 8.1).

Nalco and World Telemetry finalized the sale in January 2009. Beran alleges that World Telemetry has received over $2.9 million from Nalco. He alleges that in March 2009, World Telemetry informed him that it would change his commission structure and that a lower commission would apply to the Nalco sale. Beran did not agree to the change. Beran alleges that he is entitled to $294,000.000 in commission from the Nalco sale under his employment and commission agreement. Beran also alleges that World Telemetry never offered him stock as required by the agreement. (*Id.* at ¶¶ 4.4–4.8). In July 2009, World Telemetry terminated Beran's employment. Beran filed this suit.

## II.     The Motion to Stay

The individual defendants argue that this court should extend the § 362 stay to the claims against them because those claims are identical to those asserted against World Telemetry. Alternatively, the individual defendants argue that this court should exercise its discretion to stay the entire case. The individual defendants argue that proceeding against them inefficiently uses judicial resources, could prejudice World Telemetry in later proceedings against Beran because of collateral estoppel and its inability to participate in the development of a record, and would be prejudicial to the individual defendants because they could not subpoena documents from World

Telemetry to use in this suit. Beran responds that extending the bankruptcy stay to nondebtors is reserved for exceptional circumstances not present here because there is no agreement between World Telemetry and the individual defendants such that a judgment against the individual defendants would be a judgment against World Telemetry. Beran also argues that a discretionary stay is not needed and would prejudice him.

### A. The Legal Standard

Section 362(a)(1) provides for an automatic stay of any judicial "proceeding against the debtor." 11 U.S.C. § 362(a)(1). "Section 362(a)(3) provides that the filing of a petition 'operates as a[n] [automatic stay] applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate.'" *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987) (quoting 11 U.S.C. § 362(a)(3)). Ordinarily, the automatic stay under § 362 does not apply to actions against a nondebtor. *See In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007). Courts recognize that a § 362 stay may apply to an action against nondebtor defendants depending on their relationship to the debtor. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("[A] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt codefendants where 'there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986))). The party invoking the stay has the burden to show that it is applicable. *See* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) (noting that in bankruptcy court proceedings, "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor"); *see also Arnold v.*

*Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (holding that the defendant had "no interest to establish such an identity [of interests] with [the] debtor").

District courts may also exercise their discretion to stay a proceeding against nonbankrupt codefendants "in the interests of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983); *see also Gulf Coast Hotel–Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, Civil No. 1:08CV1430-HSO-JMR, 2010 WL 972248, at *3 (S.D. Miss. Mar. 12, 2010) (finding that a district court may issue a discretionary stay even when a § 362 is inappropriate); *Fidelity & Deposit Co. of Md. v. Tri-Lam Co.*, Civil Action No. SA-06-CA-207-XR, 2007 WL 1091311, at *1 (W.D. Tex. Apr. 9, 2007) ("The district court may also grant a discretionary stay of the action against non-bankrupt co-defendants; however, this discretion is limited."). "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Wedgeworth*, 706 F.2d at 545 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (citing *Wedgeworth*, 706 F.2d at 545).

**B.      Analysis**

There is no basis to extend the § 362 stay to the nondebtor defendants. Other than the similarity between Beran's claims against World Telemetry and his claims against the individual defendants and the potential application of collateral estoppel, the record provides no basis to conclude that a judgment against the individual defendants would in effect be a judgment against World Telemetry. *Reliant Energy Servs.*, 349 F.3d at 825. The individual defendants argue that

there are "potential questions of indemnification" between World Telemetry and the individual defendants, (Docket Entry No. 20, at 5), but they do not point to any indemnification agreement or any Texas law mandating indemnification. The Fifth Circuit has stated that a § 362 stay should extend to nonbankrupt codefendants only when there is a formal or contractual relationship between the debtor and nondebtors such that a judgment against one would in effect be a judgment against the other. *See Garlock*, 278 F.3d at 436 (rejecting argument that nonbankrupt asbestos codefendant facing the same allegations as bankrupt codefendant was entitled to stay and reasoning that "[the nonbankrupt defendant] is one of scores of different asbestos makers, users, importers, etc., with no interest to establish such an identity with [the debtor]" because "[t]here is no claim of a formal tie or contractual indemnification to create such an identity of interests"); *GATX*, 768 F.2d at 717 (the district court extended the § 362 stay to nondebtor guarantors after one guarantor declared bankruptcy; the appellate court reversed, reasoning that "[t]o prevent or delay GATX from enforcing its rights in a situation foreseen by it and contractually provided for with each guarantor would be . . . legally inequitable"); *Reliant Energy Servs.*, 349 F.3d at 825 (overturning district court's extension of a § 362 stay to Enron Canada in a breach of contract dispute involving four other bankrupt Enron parties facing similar allegations because there was no finding of a "formal tie or contractual identification . . . to create an identity of interests"). Under these cases, the presence of identical allegations against the debtor and nondebtor defendants are an insufficient ground to extend the stay to the nondebtors. There must be an actual, as opposed to an alleged or potential, identity of interests, such that a judgment against the nonbankrupt parties would in fact be a judgment against the bankrupt party. The individual defendants have not demonstrated such a relationship and have not carried their burden to demonstrate that the § 362 stay may be extended to them.

The individual defendants cite three cases to support their argument that a court should extend the stay to nonbankrupt parties when the claims are "identical." The cases, *Fed. Life Ins. Co. v. First Fin. of Tex.*, 3 B.R. 375 (S.D. Tex. 1980); *Lomas Fin. Corp. v. N. Trust Co.*, 117 B.R. 64 (S.D.N.Y. 1990); and *Darr v. Altman*, 20 S.W.3d 802, 807 (Tex. App.—Houston [1st Dist.] 2000, no pet.), do not change the results. As Beran notes, the Fifth Circuit in *GATX* described the holding of *First Financial,* as follows:

> The court in *First Financial* actually held that the automatic stay prevented a plaintiff from pursuing its fraud claim against a bankrupt corporate defendant and that, because the allegations raised against co-defendants who were principals of the debtor were "inextricably interwoven" with claims against the debtor, the court would decline to permit plaintiff to sever the co-defendants (pursuant to Fed.R.Civ.P. 21 or 42(b)) and proceed separately against them. There is absolutely no suggestion in *First Financial* that the automatic stay in bankruptcy compelled a stay of the action against the co-defendants.

768 F.2d at 716. Similarly, the Second Circuit has stated that *Lomas* was decided primarily on the basis that there was an indemnification agreement between the bankrupt and nonbankrupt parties:

> [Defendant's] reliance on [*Lomas*], is unavailing. That district court decision affirmed a bankruptcy court's injunction staying a suit against a debtor corporation's two key officers, who were accused of fraudulently causing a creditor to make a loan to the corporation. Although the district court's opinion mentions possible collateral estoppel, the ruling is primarily explained by the existence of the debtor's indemnity obligation to the corporate officers.

*Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 288 (2d Cir. 2003). Finally, while *Darr* states that an exception to the bankruptcy stay exists "when the claims against debtor and non-debtor parties are "inextricably intertwined,'" it holds only that the dismissal of a party from pending litigation does not violate a bankruptcy stay. 20 S.W.3d at 807.

Under the applicable precedent, the individuals are not entitled to an extension of World Telemetry's § 362 stay. Nor does this court find that a discretionary stay is appropriate. The inability to subpoena documents from World Telemetry would prejudice Beran more than the individual defendants, who are present and former officers of the company. The indefinite nature of the bankruptcy stay weighs in favor of declining such relief. The Fifth Circuit has cautioned that "before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution . . . in light of the principle that 'stay orders will be reversed when they are found to be of an indefinite duration.'" *Wedgeworth*, 706 F.2d at 545 (quoting *McKnight v. Blanchard*, 667 F.2d 477, 4709 (5th Cir. 1982)). The Fifth Circuit's decision in *Wedgeworth* is instructive as to how this court should weigh the competing concerns:

> Defendants have not shown that any hardship complained of is the result of proceeding to trial now. Nor is there a showing that the difficulties inherent in the general situation, including potential judicial inefficiency, constitute a sufficient offset to the plaintiffs' right to proceed without inordinate delay to resolution of their claims.

706 F.2d at 546. Under *Wedgeworth*'s rationale, the potential hardships to the individual defendants do not outweigh Beran's interests in proceeding. The proper exercise of discretion is to deny the individual defendants' request for a stay.

### III. The Motion for Remand

In Beran's motion for remand, he argues that because two of the individual defendants, Lee and Rodriguez, are not diverse, this court lacks jurisdiction. The defendants respond that Lee and Rodriguez were improperly joined because Beran has no reasonable basis for recovery under Texas law against them. They assert that under Texas law, agents are not liable on contracts entered into for disclosed principals. Beran responds that under Texas law, while agents are not liable for

contracts entered into for disclosed principles, employees are liable for their own torts and that he pleaded such claims against Lee and Rodriguez.

In their response to Beran's motion to remand, the defendants added the ground that Beran's petition fraudulently joined Lee and Rodriguez because the petition's fraud allegations against Lee and Rodriguez fail the pleading standard in Federal Rule of Civil Procedure 12(b)(6). Beran argues that this court should strike the defendant's added argument that the petition fails the Rule 12(b)(6) standard because this argument impermissibly adds a new basis for removal outside the thirty-day statutory window. Because this court finds that Beran's complaint pleads a reasonable basis for recovery under Texas law, the motion to strike is moot.

### A.     The Legal Standard

A defendant has the right to remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure has been properly followed. *See* 28 U.S.C. § 1441. A federal court has subject-matter jurisdiction based on diversity of citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). For purposes of federal diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Although there is complete diversity among Beran (a Texas citizen), World Telemetry (a Delaware and an Oklahoma citizen), and Zandbergen (an Oklahoma citizen), § 1441(b) states that "[a]ny other such action [of which the district courts have original jurisdiction] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Lee and Rodriguez's presence in the suit as in-state defendants precludes removal jurisdiction if they were properly joined.

To establish that a nondiverse defendant has been improperly joined for the purpose of defeating diversity jurisdiction, the remaining party must prove either that there has been actual fraud in the pleading of jurisdictional facts or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992, 125 S. Ct. 1825, 161 L. Ed. 2d 755 (2005). The second approach focuses on whether plaintiff has asserted a valid state-law cause of action against the nondiverse defendant. *Id.* The test is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* In determining whether there is a reasonable basis for the plaintiff to recover against a defendant under state law, a court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* "If the plaintiff can survive a Rule 12(b)(6) challenge, there [generally] is no improper joinder." *Id.*

There are cases in which a summary inquiry is appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74; *see, e.g.*, *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 311 (5th Cir. 2005) (upholding district court's piercing of the pleadings when the parties had conducted ten months of post-removal discovery). No party in the present case, however, has asked for such a summary inquiry. This court's analysis is focused on whether Beran's pleading provides a reasonable basis to predict that he may recover against the individual defendants. *Smallwood*, 385 F.3d at 573–74. If the record reveals a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court. *Rubin v. Daimlerchrysler Corp.*, No. Civ. A. H044021, 2005 WL 1214605, at *2 (S.D. Tex. May 20, 2005).

**B.	Analysis**

The individual defendants first argue that Beran's allegations do not provide a reasonable basis for recovery because under Texas law, "[a]n agent may not be held liable on a contract where the agent was acting within the scope of his authority for a disclosed principal." *City of Houston v. First City*, 827 S.W.2d 462, 480 (Tex. App.—Houston [1st Dist.] 1002, writ denied). Beran does not argue that the individual defendants are liable for World Telemetry's alleged breach of contract. Beran argues that "[i]n Texas, 'it is a longstanding rule that a corporate agent is liable for his own fraudulent and tortuous acts.'" *Thule Drilling ASA v. Schimberg*, 290 Fed. App'x 745, 747 (5th Cir. 2008) (quoting *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002)). Under Texas law, "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Because Texas law allows for liability for corporate agents for fraud and for fraudulent acts to induce a contract, Beran's petition identifies a reasonable basis for predicting recovery against the individual defendants.

The individual defendants also argue that Beran's pleading does not state a claim on which relief can be granted. Beran's specific allegations against the defendants state:

> The potential profits [of the Nalco sale] gained the notice of [World Telemetry's] officers who assured Beran that his sales commissions would be honored . . .
>
> Rodriguez, Zandbergen and Lee each individually made representations and promises to Beran regarding his employment and his commissions. These false representations were made both prior to and during Beran's employment. These representations were intended to, and did, in fact induce Beran to work for [World Telemetry], and continue his employment with [World Telemetry], based on the promise of future compensation which Defendants knew they would never pay.

(Docket Entry No. 1, Appx. A, Ex. 3, Original Petition, ¶¶ 4.4, 4.10). In asserting causes of action for fraud and fraudulent inducement, Beran alleges:

> Defendants made material false representations to induce him to enter the Agreement to join [World Telemetry] and continued to misrepresent to Beran that he would be compensated pursuant to the Agreement throughout his employment. When defendants made these representations, they either knew the representations were false or made the representations recklessly. Defendants made these representations intending that Beran would rely and act upon these representations. Beran relied on Defendants' representations and entered into binding agreements, and continued his performance of his job duties, based on Defendants' false representations. . . . Defendant's fraudulent inducement caused injuries to Beran, which resulted in the following damages:
>
>     a.    Actual damages, including benefit-of-the-bargain damages;
>     b.    Exemplary damages . . . .
>
> Defendants made material false representations to Beran that he would receive commissions in conformity with the Agreement and be given the opportunity to purchase certain shares of stock and continued to misrepresent to Beran that he would be compensated pursuant to the Agreement throughout his employment. . . . Defendant's fraud caused injuries to Beran, which resulted in the following damages:
>
>     a.    Actual damages, including benefit-of-the-bargain damages;
>     b.    Exemplary damages . . . .

(*Id.* at ¶¶ 7.1–8.2). Beran argues that he has adequately alleged fraud against the individual defendants.

The elements of a fraud cause of action under Texas law are: (1) a material misrepresentation; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon

it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties." *West v. Northstar Fin. Corp.*, 2010 WL 851415, at *5 (Tex. App.—Ft. Worth Mar. 11, 2010) (citing *Hasse v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)).

Beran has alleged the elements of both fraud and fraudulent inducement. He has alleged that the defendants made material misrepresentations that he would be "compensated pursuant to the Agreement throughout his employment" and that "he would receive his commissions in conformity with the Agreement." (Docket Entry No. 1, Appx. A, Ex. 3, Original Petition, ¶¶ 7.1, 8.1). He has alleged that the statements were false because neither the defendants nor World Telemetry intended to compensate him according to the agreement. (*Id.*). He has alleged that the speakers knew the statements to be false when made or were or made the representations recklessly, (*id.* at ¶¶ 7.1, 8.1); that the representations were made with the intent that he rely on them; and that he did rely on them by commencing and continuing employment with World Telemetry. (*Id.*). Finally, Beran has alleged that he suffered injury: the lost commission and option to purchase stocks. (*Id.*). Beran has identified who made the fraudulent statements: the three individual defendants, the corporate officers.

The individual defendants compare Beran's allegations to those found deficient in *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002). In *Great Plains*, the plaintiffs sued Morgan Stanley based on "claims arising from their conduct concerning a proposed merger between Allwaste, Inc. and Philip Services Corp." *Id.* at 308. Morgan Stanley agreed to provide financial advice to Allwaste about the deal's fairness and advised that the deal was fair.

After the merger, Philips Services revealed that its financial statements had been inaccurate. *Id.* at 309. Holders of Allwaste convertible debentures sued Morgan Stanley and three Morgan Stanley employees in state court when the value of Philip's stock declined after the merger. Morgan Stanley removed to federal court under diversity jurisdiction and argued that one of the Morgan Stanley employees, who was also a Texas resident, was fraudulently joined. *Id.* at 309–10. The plaintiffs alleged that this defendant committed fraud in representing that Morgan Stanley was qualified to perform due diligence investigations. *Id.* at 322. The individual defendants in the present case argue that the court in *Great Plains* found the allegations against the employee insufficient because they lacked specificity. (Docket Entry No. 7, at 11). The court, however, found the allegations deficient because the plaintiffs failed to plead an element of fraud, that the employee intended that the plaintiffs rely on his representation:

> Plaintiff's contention that they reasonably relied on [the employee's] representation does not address whether he intended that the debenture holders rely or had reason to expect that they would. Their assertion that [he] made misrepresentations with knowledge that they would be communicated to the other debenture holders is not found in this complaint.

*Id.* at 322. Here, Beran has alleged that the individual defendants intended that he rely on their assurances of payment in conformity with the agreement.[1]

---

[1] In two other cases cited by the defendants, the court also found fraudulent joinder because the plaintiff failed to plead a necessary element of his claim. In *Badon v. RJR Nabisco, Inc.*, the defendant did not plead an agreement in alleging conspiracy. 224 F.3d 382, 392–93 (5th Cir. 2000) ("Nowhere does the amended complaint allege any particular specific activity, agreement, or state of mind . . . ."). In *Hernandez v. Wal-Mart Assocs.*, the court dismissed because the plaintiff failed to allege all the elements of fraud. No. EP-06-CA-233-FM, 2006 WL 2883080 (W.D. Tex. Sept. 19, 2006). It wrote,

> Here, the entirety of Hernandez's claim is that the individual Defendants fraudulently induced Hernandez to sign "a document provided to him by Defendants in their final termination." Because Hernandez has failed to allege the requisite elements for a Texas common law fraud cause of action, the Court finds that Hernandez has failed to state a claim for common law

The defendants also cite *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999). In *Griggs*, the plaintiff sued State Farm and its insurance agent after he suffered a $1.2 million loss from a burglary of sports memorabilia from a public storeroom. *Id.* at 695–96. After three years of communications with the plaintiff about the documentation and filings needed to process his claim, State Farm denied the claims because he "failed to comply with his contractual duties to provide a sworn proof of loss, to produce an accurate and itemized inventory of the items stolen, and to permit reasonable access to records and documentation in support of his claim." *Id.* at 698. The plaintiff sued State Farm and the agent in state court. His allegations centered around his communications with State Farm and the agent over the three-year period. State Farm removed, arguing that the agent was fraudulently joined. The district court agreed and the plaintiff appealed. *Id.* The plaintiff argued that he asserted viable claims against the agent under the Texas Insurance Code and Texas Deceptive Trade Practices Act. TEX. INS. CODE ANN. art. 21.21 § 4 (Vernon Supp. 2008), *repealed by* Acts 2003, 78th Leg., ch. 1274, § 26(a)(1), eff. April 1, 2005; TEX. BUS. & COMMERCE CODE § 17.46. The Fifth Circuit upheld the district court's decision. The individual defendants point to the Fifth Circuit's finding the alleged false statements attributed to the agent—that State Farm "would handle [the plaintiff's] claims professionally" and her post-claim assurances that State Farm "would monitor the progress of [the plaintiff's] claim"—"are more in the nature of non-actionable puffery." *Id.* at 701. They argue that Beran's allegations are similar. But Beran's allegations amount to more than "puffery." He alleges that the three World Telemetry officers, both before and during his employment, assured him that he would be compensated under

---

fraud.

*Id.* at *5. By contrast, Beran has alleged each element of fraud.

the commission structure set forth in the parties' agreement. Additionally, the Fifth Circuit's decision in *Griggs* rested on grounds not present here. The Fifth Circuit looked to evidence demonstrating that the plaintiff was "an unusually sophisticated insured" who had filed a "large number of claims." *Id.* No similar factor is present here.

The defendants also discuss *Kaddouri v. Merrill Lynch, Pierce, Fenner, & Smith*, No. Civ. A. 304CV1456B, 2005 WL 283582 (N.D. Tex. Feb. 4, 2005). In *Kaddouri*, the plaintiff filed a state court suit against her employer, Merrill Lynch, the director of her broker group, and a senior client associate in her broker group whose behavior allegedly caused the plaintiff physical and emotional distress. *Id.* at *1. The defendants removed, arguing that the director had been fraudulently joined. The plaintiff alleged that the director made fraudulent statements to her "in order to induce her to accept a lower position within his broker group." *Id.* at *3. She alleged that the director made the six fraudulent statements: (1) she would be trained by the senior client associate whose behavior allegedly caused her physician and emotional distress; (2) "the position of client associate would last for a two year period, and that at that time she could continue in the position or possibly become a junior broker"; (3) "because of the tremendous success of the Crockett McBride team . . . this would be a good career move"; (4) "after serving as a Client Associate, she would become a Junior Broker and she would automatically get referrals . . ."; (5) "she would gain invaluable experience, including influential contact, networking opportunities, and sales opportunities"; and (6) "the contracts and opportunities would be financially lucrative when she returnted to a broker position whether or not the Broker position was with the group." *Id.* at *3–4. The court found that the first false statement "makes no sense in light of [the plaintiff's] other allegations that [the senior client associate] was disruptive and damaging." *Id.* at *3. The court found that the third and fifth statements were statements of opinion because they were "non-specific," related to "future events,"

and "merely puffing." *Id.* at *4. As to the remaining statements, because the court found that the plaintiff premised the falsity of these statements on the director's failure to provide an account of the senior client associate's conduct, it analyzed those statements under the doctrine of fraudulent concealment. The court rejected the viability of a fraudulent concealment claim against the director, finding that he had no duty do disclose the behavior of a coworker. *Id.* at *4–5. In this case, Beran does not allege fraudulent concealment. In addition, the false statements alleged by Beran are not opinion; they are specific assurances by a corporation's officers about compensation. These cases do not support retaining this case in federal court.

### IV.  Conclusion

The defendants' motion asking that World Telemetry's § 362 stay be extended to Beran's claims against the individual defendants is denied. (Docket Entry No. 17). Beran's motion to remand is granted. (Docket Entry No. 5). Beran's motion to strike is moot. (Docket Entry No. 12).

The claims against the individual defendants are remanded to the 125th District Court for Harris County, Texas. The claims against World Telemetry are subject to the § 362 stay. That part of the case is administratively closed pending the lifting of the stay.

SIGNED on September 30, 2010, at Houston, Texas.

*Lee H. Rosenthal*
United States District Judge